Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
05/14/2021 08:11 AM CDT

**State of Nebraska, appellee, v.
Kevin M. Wines, appellant.**
___ N.W.2d ___

Filed February 19, 2021.    No. S-20-445.

1. **Sentences: Appeal and Error.** Whether a defendant is entitled to credit for time served and in what amount are questions of law, subject to appellate review independent of the lower court.

2. **Statutes: Appeal and Error.** Statutory interpretation presents a question of law, which an appellate court reviews independently of the lower court.

3. **Statutes: Intent.** When interpreting a statute, the starting point and focus of the inquiry is the meaning of the statutory language, understood in context.

4. **Statutes: Appeal and Error.** Statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.

5. **Statutes.** It is not within the province of courts to read meaning into a statute that is not there or to read anything direct and plain out of a statute.

6. ____. A court must attempt to give effect to all parts of a statute, and if it can be avoided, no word, clause, or sentence will be rejected as superfluous or meaningless.

7. ____. Statutes relating to the same subject matter will be construed so as to maintain a sensible and consistent scheme, giving effect to every provision.

Appeal from the District Court for Madison County: Mark A. Johnson, Judge. Affirmed.

Jack W. Lafleur, of Moyer, Moyer & Lafleur, for appellant.

Douglas J. Peterson, Attorney General, and Kimberly A. Klein for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Papik, J.

Kevin M. Wines appeals his sentences, arguing that the district court erred in its award of credit for time served. We find no error on the part of the district court and thus affirm.

## BACKGROUND

*2016 Case.*

This appeal involves several criminal proceedings against Wines. In the first such proceeding, commenced in 2016 (the 2016 case), Wines entered pleas of guilty to one count of delivery of a controlled substance and one count of attempted delivery of a controlled substance.

Following his convictions, Wines was sentenced to a term of probation and ordered to serve 90 days in jail. In July 2018, while still serving his term of probation, a search of Wines' residence revealed evidence of drug activity. Wines was thereafter arrested and charged with multiple offenses.

After the arrest, the State filed an information to revoke Wines' probation in the 2016 case. In February 2019, the district court accepted Wines' admission that he violated his probation, revoked his probation, and sentenced Wines on his original convictions. The district court sentenced Wines to 4 to 8 years' imprisonment for delivery of a controlled substance and 1 to 2 years' imprisonment for attempted delivery of a controlled substance. Wines was awarded 30 days' credit for time served. The sentences were ordered to be served consecutively.

*2018 Case.*

As mentioned above, in addition to seeking to revoke Wines' probation in the 2016 case, the State also filed another criminal case against Wines in 2018 (the 2018 case). In the

2018 case, Wines entered a plea of no contest to each of the following charges: attempted possession of marijuana with intent to distribute, attempted tampering with evidence, attempted possession of tramadol, possession of ecstasy, and child abuse or neglect.

In February 2019, the district court accepted Wines' no contest pleas and sentenced him to 2 to 3 years' imprisonment for attempted possession of marijuana with intent to distribute, 6 months' imprisonment for attempted tampering with evidence, 6 months' imprisonment for attempted possession of tramadol, 1 to 2 years' imprisonment for possession of ecstasy, and 1 year's imprisonment for child abuse or neglect. Each of the sentences were ordered to be served consecutively to the other sentences imposed in the 2018 case, but concurrently with Wines' sentences in the 2016 case. Wines was awarded 14 days' credit for time served.

Wines timely appealed his sentences in both the 2016 case and the 2018 case.

*Court of Appeals.*

Wines' initial appeal was decided by the Nebraska Court of Appeals. The Court of Appeals found plain error in both of the sentences in the 2016 case and two of the sentences in the 2018 case. It otherwise affirmed.

In the appeal of the 2016 case, the Court of Appeals found, among other things, that the district court should have imposed determinate sentences for both of Wines' convictions. The Court of Appeals vacated the sentences imposed in the 2016 case and remanded the cause with instructions to sentence Wines to determinate sentences.

In the appeal of the 2018 case, the Court of Appeals also found that the district court should have imposed determinate sentences for Wines' convictions for attempted possession of marijuana with intent to distribute and possession of ecstasy. It vacated those sentences and remanded the cause to the district court with instructions to impose determinate sentences for

those offenses. The Court of Appeals found no error in Wines'
other sentences in the 2018 case.

*Sentencing Proceedings*
*on Remand.*

In May 2020, the district court held a hearing at which it
resentenced Wines in both the 2016 case and the 2018 case.
After the district court stated that it would address the 2016
case first, Wines' counsel raised the issue of credit for time
served. Counsel for Wines and counsel for the State agreed
that Wines had served 451 days between the 2019 sentencing
proceeding in both cases and the 2020 resentencing proceed-
ing. In addition, Wines' counsel explained that he received an
additional 30 days' credit for time served prior to the 2019 sen-
tencing proceeding in the 2016 case. The district court went on
to sentence Wines in the 2016 case. Wines was sentenced to 4
years' imprisonment with credit for 481 days served and a term
of postrelease supervision for delivery of a controlled sub-
stance and to 2 years' imprisonment and a term of postrelease
supervision for attempted delivery of a controlled substance.
The sentences were ordered to be served consecutively.

The district court then considered the 2018 case. Again,
Wines' counsel raised the issue of credit for time served,
noting that Wines was given 14 days' credit for time served
in the 2018 case in the initial sentences. The district court
then imposed sentences in the 2018 case. For the conviction
of attempted possession of marijuana with intent to distrib-
ute, the district court sentenced Wines to 24 months' impris-
onment, with credit for 14 days previously served, and a
period of postrelease supervision. For the conviction of pos-
session of ecstasy, the district court sentenced Wines to 12
months' imprisonment and a period of postrelease supervision.
It ordered the two new sentences in the 2018 case to be served
concurrently with one another. It also ordered the sentences
in the 2018 case to be served concurrently with the sentences
in the 2016 case. The district court's sentencing order stated

that the other sentences in the 2018 case "shall remain as sentenced previously."

Wines filed a timely notice of appeal in the 2018 case.

## ASSIGNMENT OF ERROR

Wines assigns that the district court erred in its award of credit for time served in the 2018 case.

## STANDARD OF REVIEW

[1] Whether a defendant is entitled to credit for time served and in what amount are questions of law, subject to appellate review independent of the lower court. *State v. Phillips*, 302 Neb. 686, 924 N.W.2d 699 (2019).

[2] Statutory interpretation presents a question of law, which an appellate court reviews independently of the lower court. *Id.*

## ANALYSIS

Wines argues that the district court failed to award him all of the credit for time served to which he was entitled for his sentences in the 2018 case. The district court awarded Wines 14 days' credit for time served on his sentence for attempted possession of marijuana with intent to distribute. Wines claims it should also have awarded him an additional 451 days' credit for the time Wines was in custody between his initial sentencing in February 2019 and his resentencing in May 2020. Wines acknowledges that the district court applied credit for time served for the time Wines was in custody between his 2019 sentencing proceeding and his 2020 resentencing proceeding to his 4-year sentence for delivery of a controlled substance in the 2016 case. The issue in this case is thus whether Wines was entitled to have credit for time spent in custody between his 2019 sentencing proceeding and his 2020 resentencing proceeding applied to two different sentences which were ordered to be served concurrently to one another.

Wines and the State agree that any entitlement to credit for time served in this case is controlled by Neb. Rev. Stat.

§ 83-1,106 (Reissue 2014). As the entirety of § 83-1,106 is relevant to the parties' arguments, we reprint it in full here:

(1) Credit against the maximum term and any minimum term shall be given to an offender for time spent in custody as a result of the criminal charge for which a prison sentence is imposed or as a result of the conduct on which such a charge is based. This shall specifically include, but shall not be limited to, time spent in custody prior to trial, during trial, pending sentence, pending the resolution of an appeal, and prior to delivery of the offender to the custody of the Department of Correctional Services, the county board of corrections, or, in counties which do not have a county board of corrections, the county sheriff.

(2) Credit against the maximum term and any minimum term shall be given to an offender for time spent in custody under a prior sentence if he or she is later reprosecuted and resentenced for the same offense or for another offense based on the same conduct. In the case of such a reprosecution, this shall include credit in accordance with subsection (1) of this section for time spent in custody as a result of both the original charge and any subsequent charge for the same offense or for another offense based on the same conduct.

(3) If an offender is serving consecutive or concurrent sentences, or both, and if one of the sentences is set aside as the result of a direct or collateral proceeding, credit against the maximum term and any minimum term of the remaining sentences shall be given for all time served since the commission of the offenses on which the sentences set aside were based.

(4) If the offender is arrested on one charge and prosecuted on another charge growing out of conduct which occurred prior to his or her arrest, credit against the maximum term and any minimum term of any sentence resulting from such prosecution shall be given for all time

spent in custody under the former charge which has not been credited against another sentence.

(5) Credit for time served shall only be given in accordance with the procedure specified in this subsection:

(a) Credit to an offender who is eligible therefor under subsections (1), (2), and (4) of this section shall be set forth as a part of the sentence; or

(b) Credit to an offender who is eligible therefor under subsection (3) of this section shall only be given by the court in which such sentence was set aside by entering such credit in the final order setting aside such sentence.

[3-7] In considering the parties' arguments concerning § 83-1,106, we apply our familiar principles of statutory interpretation, which we briefly review here. When interpreting a statute, the starting point and focus of the inquiry is the meaning of the statutory language, understood in context. *In re Guardianship of Eliza W.*, 304 Neb. 995, 938 N.W.2d 307 (2020). Our analysis begins with the text, because statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous. See *id.* Neither is it within the province of courts to read meaning into a statute that is not there or to read anything direct and plain out of a statute. *Parks v. Hy-Vee*, 307 Neb. 927, 951 N.W.2d 504 (2020). A court must attempt to give effect to all parts of a statute, and if it can be avoided, no word, clause, or sentence will be rejected as superfluous or meaningless. *Ash Grove Cement Co. v. Nebraska Dept. of Rev.*, 306 Neb. 947, 947 N.W.2d 731 (2020). Statutes relating to the same subject matter will be construed so as to maintain a sensible and consistent scheme, giving effect to every provision. *Id.*

In support of his argument that the district court erred by not applying credit for time spent in custody between his initial sentencing and his resentencing to multiple sentences, Wines relies on several subsections of § 83-1,106, the first being § 83-1,106(1). This is not the first time, however,

that we have been presented with an argument that under § 83-1,106(1), a defendant should have credit for time spent in custody applied to multiple concurrent sentences.

In *State v. Banes*, 268 Neb. 805, 688 N.W.2d 594 (2004), we held that the Court of Appeals erred when it found that a defendant was entitled to have credit for the same time period in custody applied to two different concurrent sentences. The defendant in *Banes* had been arrested on one charge, released on bond for that charge, and then arrested on an unrelated charge after which the district court allowed a refund of the bond money posted in the first case. At issue was how credit for time served should be applied for the period of time after the second arrest and refund of the bond money during which the defendant was in custody as a result of two unrelated charges. Considering both subsections (1) and (4) of § 83-1,106, we held that credit for time served should be applied to only one sentence. As we explained, "when concurrent sentences are imposed, the credit is applied once, and the credit applied once, in effect, is applied against each concurrent sentence." *Banes*, 268 Neb. at 812, 688 N.W.2d at 599. See, also, *State v. Sanchez*, 2 Neb. App. 1008, 520 N.W.2d 33 (1994).

Wines acknowledges that we held in *Banes* that the defendant should have credit applied to only one of his concurrent sentences, but argues that this case is distinguishable. The distinction on which he relies is that *Banes* involved credit for time the defendant was in custody before any sentence was pronounced, while this case involves credit for time the defendant was in custody in between an initial sentencing and a resentencing. Wines has identified a difference between the two cases, but we are not convinced that the language of § 83-1,106(1) requires that credit should be applied to multiple sentences under these circumstances. Instead, we observe that § 83-1,106(1) provides that it applies to time spent in custody both "pending sentence" and "pending the resolution of an appeal." During the period of time at issue here, Wines was initially in custody pending the resolution of an appeal in

both the 2016 case and the 2018 case and then, after the Court of Appeals vacated his sentences and remanded the causes for resentencing, he was in custody pending sentence in both cases. We see nothing in the language of § 83-1,106(1) indicating that credit for time served should be applied to only one concurrent sentence while a defendant is in custody pending sentence under circumstances like those in *Banes* but should be applied to multiple concurrent sentences when the defendant is in custody pending the resolution of an appeal and then pending sentence, as here.

Wines also suggested at oral argument that § 83-1,106(2) supports his argument that credit for the time period at issue should have been applied to sentences in both the 2016 case and the 2018 case. Again, we must disagree. Section 83-1,106(2) provides that credit for time served should be applied in a scenario in which the defendant is given a sentence and then later "reprosecuted and resentenced for the same offense or for another offense based on the same conduct." That language has no application here. Wines was resentenced but never "reprosecuted" for the same offense or for another offense based on the same conduct.

Finally, Wines argues that under § 83-1,106(3), the district court should have applied credit for time served—for the period between his initial sentencing and his resentencing—to his sentences in the 2018 case for attempted tampering with evidence, attempted possession of tramadol, and child abuse or neglect. These are the three sentences in the 2018 case that were affirmed by the Court of Appeals in Wines' first appeal. Wines argues that such credit should be applied to those sentences because, in the parlance of § 83-1,106(3), other sentences were "set aside" and those sentences were "remaining."

We find it unnecessary to determine whether the circumstances at issue here fall within the language of § 83-1,106(3). We reach this conclusion because § 83-1,106(5) provides that credit for time served can only be given in accordance with its procedures and further provides that any credit awarded

under § 83-1,106(3) "shall only be given by the court in which such sentence was set aside by entering such credit in the final order setting aside such sentence." § 83-1,106(5)(b). Thus, even assuming that § 83-1,106(3) applied when the Court of Appeals vacated some of Wines' sentences and not others, under § 83-1,106(5)(b), any resulting credit for time served under § 83-1,106(3) could only have been awarded by the Court of Appeals. As the district court lacked power to award any credit for time served under § 83-1,106(3), we find it did not err by not doing so.

The district court awarded Wines 451 days of credit for time served for the time he was in custody between his 2019 sentencing proceeding and his 2020 resentencing proceeding. It applied that credit to his 4-year sentence for delivery of a controlled substance in the 2016 case. Having considered Wines' arguments, we are not persuaded that the district court erred by not also applying credit for the same time period to his sentences in the 2018 case.

CONCLUSION

Finding no error in the district court's sentences, we affirm.

Affirmed.